**J. W. AMOS et ux., Appellants,**

v.

**J. Dorsey ADAMS, Appellee.**

No. 15932.

Court of Civil Appeals of Texas.

Dallas.

Nov. 17, 1961.

Rehearing Denied Dec. 15, 1961.

W. B. Pope, Fort Worth, for appellants.

Ernest May, Fort Worth, for appellee.

DIXON, Chief Justice.

Appellee J. Dorsey Adams filed a statutory trespass to try title suit against appellants J. W. Amos and wife Anna C. Amos.

Appellants, in addition to their answer, filed a cross-action against appellee and also an action against J. Roy Williams as a third party defendant. In the cross-action they allege on information and belief that appellee Adams and J. Roy Williams entered into a conspiracy in regard to two vendor's liens against the property in question, which vendor's liens appellee claimed to have bought. In their cross-action appellants pray (1) that a first vendor's lien of $7,800 be declared of no force or effect as a lien; (2) in the alternative that the part of the first vendor's lien represented by a $3,000 loan against the property be declared of no force or effect; and (3) for $370 actual damages and $20,000 exemplary damages.

Appellee filed a motion for summary judgment. The court severed appellants' cross-action against appellee Adams and his action against J. Roy Williams from appellee's trespass to try title suit, and decreed that the said actions should be docketed as separate suits for separate trials. The court then sustained appellee's motion for summary judgment.

Judgment was accordingly entered for appellee Adams awarding him title and possession of the property in controversy. No complaint is made on this appeal of the severance of appellants' cross-action and their action against Williams from appellee's suit. The only matter before us is the propriety of the summary judgment in favor of appellee in his trespass to try title suit.

In his motion for summary judgment appellee asserts in substance that he bought vendor's titles superior to appellants' title, the latter title being burdened with an obligation to pay installment payments on the balance of the purchase price; that the purchase money was past due; and that appellee Adams, as assignee of the vendor's superior title, elected to rescind the sale to appellants and reclaim the land.

The affidavits in support of appellee's motion are in conformity to Rule 166-A(e) Texas Rules of Civil Procedure. Attached to one of the affidavits are copies of instruments filed for record in Van Zandt County, as follows:

(1) On August 14, 1954 Addie Lois Spivey and husband conveyed the land to J. Roy Williams, Trustee. As part of the purchase price Williams and wife Rubie Lee Williams delivered to the order of the First National Bank of Grand Saline, Texas, their note in the amount of $6,000 principal. It was expressly provided that the Bank, which had advanced the $6,000 on the purchase price for the Williams, and the Bank's successors and assigns were subrogated to all the rights, privileges and equity of the vendor's lien as if they were the original vendors, and the superior title reserved in the deed by the vendors was transferred to the Bank.

(2) On December 8, 1956 the Williams conveyed the land to Woodrow Joslin. In connection with this conveyance Rubie Lee Williams, wife of J. Roy Williams, represented that on January 31, 1956, she abandoned the farm as her homestead; that her home was then in Fort Worth, Texas; and that she was conveying the land to Woodrow

Joslin for the purpose of a division of her community property with· J. Roy Williams,· from whom she was then permanently separated, and from whom the District Court of Van Zandt County, Texas had granted her a divorce.[1]

(3) On December 8, 1956 Woodrow Joslin conveyed the land to J. Roy Williams for $3,000 paid by the First National Bank of Grand Saline, Texas for Williams and the latter's assumption "of the indebted-· ness against this property." On the same date Williams delivered his vendor's lien note for $3,000 to the Bank. In connection with these transactions the Bank again became the assignee of the superior title reserved in the deed.

(4) On December 8, 1956 Williams made and delivered to the order of the First National Bank of Grand Saline, Texas his installment note for $7,800 in renewal and extension of the $4,800 balance on the original $6,000 first vendor's lien and the $3,000 on the second vendor's lien. Again the Bank as assignee retained the superior title reserved in the two deeds of conveyance.

(5) On February 15, 1958 J. Roy Williams and Rubie Lee Williams conveyed the property to appellants J. W. Amos and wife Anna C. Amos. The deed recites their assumption of "the unpaid balance due" on the $7,800 note referred to in paragraph (4) above. As additional consideration appellants executed a note for $5,550 payable in installments to the order of J. Roy Williams. Again a vendor's lien was reserved by the grantors.

(6) On January 30, 1960 appellee by endorsement of the First National Bank in Grand Saline, Texas and J. Roy Williams, respectively, became the holder and owner for value of the notes described in paragraphs (4) and (5) hereof. The transfer from the Bank expressly recites that "all liens and title held by it in and to, said land" are included in the conveyance of liens.

In other affidavits it is disclosed that· appellee Adams paid to the First National Bank of Grand Saline, Texas the sum of $6,001.76 for the Bank's first vendor's lien note and its liens and title to the land, of which sum $5,500 was paid by a bank cashier's check and the balance in cash. A copy of the cashier's check is attached to the affidavit.

In response to requests for admissions appellants admitted that in their deed from J. Roy Williams and Rubie Lee Williams they had assumed payment of the $7,800 note heretofore described, that the balance they assumed and agreed to pay amounted to more than $6,000, and that all sums afterwards credited on the note were paid by J. Roy Williams. Appellants also admitted that in connection with their purchase of the land they made and delivered to J. Roy Williams the $5,500 note heretofore described.

In answer to appellee's motion for summary judgment appellants filed an affidavit by their attorney which did not meet the requirements of Rule 166–A(e) T.R.C.P. In a later affidavit appellants stated that they were aware of all the facts and matters stated in their attorney's affidavit and that such facts and matters were true and correct. Appellants then adopted and by reference incorporated in their affidavits all the facts and matters stated in the attorney's affidavit. However, appellants' affidavit does not state that it is made on personal knowledge, and it does not affirmatively show that they are competent to testify to the matters stated therein.

The attorney's affidavit made statements in substance as follows:

(1) Appellee is not the holder and owner of the notes sued on "for the reason that

---

1. Elsewhere in the record it is shown that Williams subsequently appealed from the judgment granting his wife a divorce. Pending the appeal the parties were reconciled. Later they obtained a consent reversal and remand by a Court of Civil Appeals.

the plaintiff purchased said notes after maturity and when the same were in default."

(2) Appellee did not pay a full or adequate consideration for said notes.

(3) The execution and delivery of said notes were based on a special consideration and subject to a special agreement between appellants and J. Roy Williams as shown of record in Van Zandt County, of which agreement appellee had actual notice. The essence of this agreement (the instrument is copied in the record) was that J. Roy Williams would make the payments on the note held by the Bank and forego payments on the note held by him until January 18, 1958, or until appellants could secure a loan sufficient to renew both the first and second liens.

(4) J. Roy Williams adopted and pursued a course of conduct interfering with and prejudicing appellants every time they undertook to obtain a loan, and that appellee knew of and is charged with these defenses against said note.

### Opinion.

In three points on appeal appellants assert that (1) the record raises a fact issue as to whether appellee had actual notice that the notes in question were not to become in default through nonpayment by appellants in view of the agreement of J. Roy Williams to keep said notes in current condition until appellants obtained a new loan refinancing the existing loans; (2) the record raises a fact issue as to whether appellee is the actual owner of the notes upon which he relies for title and possession of the real estate involved; and (3) the record raises a fact issue as to whether the first vendor's lien note was valid depending on the fact whether the property securing the loan was a homestead at the time the loan was made.

We have concluded that appellants' points on appeal are without merit and that the court properly sustained appellee's motion for summary judgment.

It is important to remember that appellee did not sue for debt and foreclosure based on the notes and liens securing the notes. He filed a statutory trespass to try title suit based on his superior title reserved in the various deeds heretofore described. It is well established that a vendee, until he pays all the purchase price, cannot dispute the vendor's superior title, and when default occurs in payment of the purchase price, the vendor or his assignee may have his action in trespass to try title. White v. Cole, 87 Tex. 500, 29 S.W. 759; Hamblen v. Folts, 70 Tex. 132, 7 S.W. 834; Young v. Fitts, 138 Tex. 136, 157 S.W.2d 873.

In such case the vendee in the purchase deed, or his successors who hold the inferior title, in order to defeat the plaintiff's right to recover in a trespass to try title suit must make payment, or tender payment of the balance of the purchase money. Yett v. Houston Farms Development Co., Tex.Civ.App., 41 S.W.2d 305; Rutherford v. Mothershed, 42 Tex.Civ.App. 360, 92 S.W. 1021. In the case now before us appellants have not tendered payment of the unpaid balance of the $7,800 note, nor even the installment payments which were in default.

The fact that appellee acquired the notes, liens and superior title after maturity does not mean that he is not the holder and owner of the notes and the superior title; nor does the fact defeat the right of the holder of the superior title to recover in his trespass to try title suit. Young v. Harbin Citrus Groves, Tex.Civ.App., 130 S.W.2d 896; Woodward v. Ross, Tex.Civ. App., 153 S.W. 158; Rutherford v. Mothershed, 42 Tex.Civ.App. 360, 92 S.W. 1021; White v. Cole, 87 Tex. 500, 29 S.W. 759.

Appellants attack only part of the unpaid balance on the ground that it is invalid because it was a loan on a homestead. This part is the $3,000 advanced by the Bank in 1956 when Woodrow Joslin conveyed the property to J. Roy Williams as part of a divorce property settlement. The

balance of the vendor's lien then in existence, the unpaid portion of the purchase price in the conveyance in 1954 from the Spiveys to J. Roy Williams, is not effected.

■ In any event appellants, having assumed payment of the whole unpaid balance of the purchase price, are not in position to raise the homestead question. Warren v. Higginbotham-Bartlett Company, Tex.Civ. App., 75 S.W.2d 487.

■ The Bank, as holder of the $7,800 vendor's lien and superior title, could not have been affected by the special agreement later entered into between J. Roy Williams and appellants. The $7,800 vendor's lien of 1956 was a renewal and extension of earlier vendor's liens, one of which was the balance of $4,800 on the vendor's lien fixed against the property in 1954 in the conveyance from Spivey to Williams. The special agreement between appellants and Williams was not executed until 1958 when Williams sold his interest in the property to appellants. Appellee Adams, as assignee of the Bank's earlier superior title, stood in the shoes of the Bank, not in the shoes of Williams.

Appellants' three points on appeal are overruled.

The judgment of the trial court is affirmed.