

# THE ATTORNEY GENERAL
## OF TEXAS

May 8, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable James E. (Pete) Laney  
Chairman  
·State Affairs Committee  
Texas House of Representatives  
P. O. Box 2910  
Austin, Texas   78769

Opinion No.  JM-691

Re:  Designation of agent, broker or company for Optional Retirement investments or annuities

Dear Representative Laney:

You ask if participants in an Optional Retirement Program (ORP) authorized by chapter 36 of Title 110B, V.T.C.S., may designate the agent, broker, or company through which investments or annuities may be arranged. You suggest that they may do so and that their choice is limited only by the provisions of sections 401(g) and 403(b) of the federal Internal Revenue Code of 1954, as it existed on January 1, 1981.

The 1981 date is fixed by section 36.002 of Title 110B:

> (a)  The optional retirement program established as provided by this subtitle shall provide for contributions to any type of investment authorized in Section 403(b) of the federal Internal Revenue Code of 1954, 42 U.S. Code, as it existed on January 1, 1981, and for the purchase of fixed or variable retirement annuities that meet the requirements of that section and Section 401(g) of the federal Internal Revenue Code of 1954, 42 U.S. Code, as amended.

> (b)  Participation in the optional retirement program is an alternative to active membership in the retirement system.

As amended by Acts 1981, 67th Leg., 1st C. S., ch. 18, §35, at 195, 207.

It has been argued that section 36.004 of Title 110B, set out below, allows the governing board of an institution of higher education to provide for contributions to any federally authorized type of investment and to arrange the purchase of annuity contracts from "any insurance or annuity company that is qualified to do business in this state," without restriction. It is said that the language of section 36.004 "indicates that a participant should be

allowed freedom of choice in selecting the vendor from which he or she wishes to purchase an authorized investment [or] annuity."

Section 36.004, amended in 1981 by the same act that amended section 36.002, reads in its entirety:

> (a) A governing board may provide for contributions to any type of investment authorized in Section 403(b) of the federal Internal Revenue Code of 1954, 42 U.S. Code, as it existed on January 1, 1981, and may arrange the purchase of annuity contracts from any insurance or annuity company that is qualified to do business in this state.

> (b) If a governing board has more than one component institution, agency, or unit under its jurisdiction, the governing board may provide a separate optional retirement program for each component or may place two or more components under a single program.

V.T.C.S. Title 110B, Public Retirement Systems, §36.004.

We do not read this language as indicating that a participant has any right to choose Optional Retirement Program vendors. The statute confers certain authority on "a governing board." The most that might be argued from this language, in our opinion, is that it does not prevent a governing board from considering the wishes of a participant in selecting Optional Retirement Program vendors.

It is also suggested that 1985 amendments to articles 6228a-5 and 6252-3b, V.T.C.S., demonstrate a legislative intent that participants in an Optional Retirement Program have such a right because the categories of employees affected overlap. Article 6228a-5 reads in pertinent part:

> Section 1. Local Boards of Education of the Public Schools of this State, the Governing Boards of the state-supported institutions of higher education, the Coordinating Board, Texas College and University System, the Central Education Agency, the Texas Department of Mental Health and Mental Retardation and the state schools, state hospitals, and other facilities and institutions under its jurisdiction, the Texas Youth Commission and facilities and institutions under its jurisdiction, and the governing boards of Centers for Community Mental Health and Mental Retardation Services, county hospitals, city hospitals, city-county hospitals, hospital authorities, hospital districts, affiliated state agencies,

and political subdivisions of each of them, <u>may enter into agreements with their employees for the purchase of annuities or for contributions to any type of investment for their employees as authorized in Section 403(b) of the Internal Revenue Code of 1954, as it existed on January 1, 1981.</u>

Sec. 2.  (a). . . .

(b) The comptroller or the governing board, as the case may be, may reduce the salary of participants when authorized in writing and shall apply the amount of the reduction to the purchase of annuity contracts or to contributions to any type of investment authorized in Section 403(b) of the Internal Revenue Code of 1954, as it existed on January 1, 1981, <u>the exclusive control of which will vest in the participants.</u>

(c) <u>The employee is entitled to designate any agent, broker, or company through which the annuity or investment is to be purchased.</u> (Emphasis added).

The pertinent provisions of article 6252-3b are:

Sec. 1. <u>The state or any county, city, town, or other political subdivision may, by contract, agree with any employee to defer, in whole or in part, any portion of that employee's compensation and may subsequently, with the consent of the employee, contract for, purchase, or otherwise procure a life insurance, annuity, mutual fund, or other investment contract for the purpose of funding a deferred compensation program for the employee,</u> from any life underwriter duly licensed by this state who represents an insurance company licensed to contract business in this state, any state or national bank domiciled in this state whose deposits are insured by the Federal Deposit Insurance Corporation, any savings and loan association doing business in this state whose accounts are insured by the Federal Savings and Loan Insurance Corporation, or any credit union doing business in this state whose accounts are insured by the National Credit Union Administration or the Texas Share Guaranty Credit Union or a mutual fund licensed to do business in this state.  <u>The amounts which participating employees agree to defer are the only funds a seller of investment products may receive under this program.</u>

. . . .

Sec. 3B. (a) For investments in a deferred compensation product offered <u>through a plan created under Section 457 of the Internal Revenue Code</u>, the comptroller may not require a seller of investment products to solicit business, place contracts, or otherwise procure deferred compensation agreements with or through particular agents, brokers, or companies. <u>Each state employee shall have the right to designate the agent, broker, or company through which the investment product is purchased.</u> Provided, however, that nothing in this section shall prevent the comptroller from restricting the participation of any agent, broker, or company in the deferred compensation program for good cause.

(b) The comptroller, when soliciting bids for the deferred compensation plan authorized under Section 401(k) of the Internal Revenue Code, shall consider bids from companies requiring the use of their own agents to sell their products as well as companies selling their products through a third party administrator or otherwise.

Sec. 4. <u>For the purposes of this Act, 'employee' means any person whether appointed, elected, or under contract, providing services for the state, county, city, town, or other political subdivision, for which compensation is paid.</u>

. . . .

Sec. 6. <u>The deferred compensation program established by this Act shall exist and serve in addition to retirement, pension, or benefit systems established by the state, county, city, town, or other political subdivision, and no deferral of income under the deferred compensation program shall affect a reduction of any retirement, pension, or other benefit provided by law.</u> However, any sum deferred under the deferred compensation program shall not be subject to taxation until distribution is actually made to the employee. (Emphasis added).

It is true that the categories of employees affected by articles 6228a-5 and 6252-3b overlap with those entitled to participate in the Optional Retirement Program. Eligibility to participate in the Optional Retirement Program, subject to rules adopted by the governing board, is open to all faculty members in a component institution. V.T.C.S. Title 110B, §§36.101, 31.001(8). Cf. Carpenter v. Stephen F. Austin State University, 706 F.2d 608 (5th Cir. 1983) (exclusions).

Each of those persons is also now an "employee of a governmental body covered" within the meaning of article 6228a-5, and a person "appointed, elected, or under contract, providing services . . . for which compensation is paid" within section 4 of article 6252-3b. Cf. Attorney General Opinion M-313 (1968) (coordinating board employees). But we do not think the overlap affects the construction of chapter 36 of Title 110B. Cf. Attorney General Opinion MW-570 (1982) (overlap of coverage between articles 6252-3b and 6228a-5).

Chapter 36 of Title 110B establishes the Optional Retirement Program as a retirement system for certain state employees in which such employees can choose to participate instead of participating in the Teachers Retirement System of Texas. V.T.C.S. Title 110B, §§11.001(2), 31.001, 36.001, 36.002(b). On the other hand, articles 6228a-5 and 6252-3b do not establish retirement systems; they merely accord employees an opportunity to take advantage of certain federal tax reduction measures, if available. See Attorney General Opinion C-83 (1963) (article 6228a-5 intent). The differences are not cosmetic. V.T.C.S. Title 110B, §11.001(2). See Attorney General Opinion MW-548 (1982).

All such employees must make contributions of a certain level to a retirement system -- either the Teacher Retirement System or the Optional Retirement Program. V.T.C.S. Title 110B, §§36.201, 35.403, 32.002, 31.001(14). Such contributions are mandatory.[1] See In re Roper, 49 B.R. 4 (Bankr. N.D. Tex. 1984). The state is statutorily required to make even greater contributions for the employee's benefit. Id. §§36.201, 35.404. But benefits in the Optional Retirement Program vest in a participant only after a full year of participation. Id. §36.204. And benefits are available to the participant only upon death, retirement, or termination of the participant's employment in all institutions of higher education. Id. §36.105(c). See Attorney General Opinion MW-548 (1982) (availability of investment benefits as well as annuity benefits restricted).

By contrast, participation in a tax sheltered annuity or investment plan under article 6228a-5, or in either of the deferred compensation plans under article 6252-3b, is purely voluntary and the state contributes no funds toward the realization of any of them. They are not established for the same reasons that retirement systems are established, i.e., to provide security for the employees as well as to encourage qualified persons to become and remain public

---

1. By electing to reduce their salaries, participants may, in effect, also voluntarily contribute (unmatched) additional amounts to the Optional Retirement Program. See V.T.C.S. Title 110B, §36.203.

employees. Tex. Const. art. XVI, §67. See Woods v. Reilly, 218 S.W.2d 437 (Tex. 1949); Attorney General Opinion Nos. H-1060 (1977); H-532 (1975).

There is no delayed vesting or statutorily-mandated delayed realization of benefits under the tax shelter or deferred compensation plans because the public interest is not the same. No public money, in the ordinary sense, is invested or contributed; the security, safety, and stability of those investment programs are private — not public — concerns.

We advise that the law does not accord participants in an Optional Retirement Program any right to designate the agent, broker, or company through which investments or annuities may be arranged pursuant to chapter 36 of Title 110B, V.T.C.S., although the governing board of an institution establishing such a program may take into account the wishes of participants about such matters if it may be done in a manner consistent with law and the protection of the public interest.

### SUMMARY

Participants in the Optional Retirement Program have no statutory right to designate the agent, broker, or company through which investments or annuities may be arranged pursuant to chapter 36 of Title 110B, V.T.C.S.

Very truly yours

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General